ERISE IP, P.A.
Eric A. Buresh (*pro hac vice*)
eric.buresh@eriseip.com
Lydia C. Raw (*pro hac vice*)
lydia.raw@eriseip.com
Chris R. Schmidt (Bar No. 298761)
chris.schmidt@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211

*Attorneys for Defendant Twilio Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| Missed Call, LLC, | ) Case No.: 3:24-cv-00681-LB |
| Plaintiff, | ) |
| | ) **DEFENDANT TWILIO INC.'S** |
| vs. | ) **§ 101 MOTION TO DISMISS** |
| | ) |
| Twilio Inc., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

# TABLE OF CONTENTS

I.    INTRODUCTION......................................................................................................... 1

II.   NATURE AND STAGE OF THE CASE ........................................................................ 1

III.  SUMMARY OF ARGUMENT ..................................................................................... 2

IV.  STATEMENT OF FACTS ........................................................................................... 3

V.   LEGAL STANDARDS ................................................................................................ 5

   A.   Dismissal under Fed. R. Civ. P. 12(b)(6).......................................................... 5

   B.   Patent eligibility under 35 U.S.C. § 101 ......................................................... 5

VI.  ARGUMENT ............................................................................................................ 6

   A.   The '872 patent is invalid under 35 U.S.C. § 101........................................... 6

      1.   Claim 1 is representative.......................................................................... 7

      2.   Alice step 1: the claims are directed to an abstract idea. ........................... 8

      3.   Alice step 2: the claims contain no inventive concept sufficient to confer patent eligibility. ............................................................................................................... 12

VII. CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. Ltd. V. CLS Bank Int'l,*
573 U.S. 208 (2014).................................................................5, 6, 7

*Apple, Inc. v. Ameranth, Inc.,*
842 F.3d 1229 (Fed. Cir. 2016)...............................................................6

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...............................................................5

*Bancorp Servs. L.L.C. v Sun Life Assur. Co.,*
687 F.3d 1266 (Fed. Cir. 2012)...............................................................5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................5

*Bilski v Kappos,*
561 U.S. 593 (2010)...............................................................5

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014)...............................................................13

*CyberSource Corp. v. Retail Decisions, Inc.,*
654 F.3d 1366 (Fed. Cir. 2011)...............................................................8

*DDR Holdings, LLC v. Hotels.com, L.P.,*
773 F.3d 1245 (Fed. Cir. 2014)...............................................................14

*Diamond v Chakrabarty,*
447 U.S. 303 (1980)...............................................................5

*Diamond v. Diehr,*
450 U.S. 175 (1981)...............................................................6

*Dropbox, Inc. v. Synchronoss Techs., Inc.,*
371 F. Supp. 3d 668 (N.D. Cal. 2019), *aff'd*, 815 F. App'x 529
(Fed. Cir. 2020)...............................................................10

*eDekka LLC v. 3Balls.com, Inc.,*
No. 2:15-CV-541 JRG, 2015 WL 5579840 (E.D. Tex. Sept. 21, 2015)...............................................................11

*Elec. Power Grp., LLC v. Alstom S.A.,*
830 F.3d 1350 (Fed. Cir. 2016)...............................................................9, 11, 13

2

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)....................................................................................12

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016)....................................................................................16

*Gonzalez v. Infostream Grp., Inc.*, No. 2:14-CV-906-JRG,
  2016 WL 1643313 (E.D. Tex. Apr. 26, 2016) ...........................................................14

*Gonzalez v. New Life Ventures, Inc.*,
  696 F. App'x 511 (Fed. Cir. 2017) ..............................................................................14

*In-Depth Test, LLC v. Maxim Integrated, Prod., Inc.*,
  No. CV 14-887-CFC, 2018 WL 6617142, at *4 (D. Del. Dec. 18, 2018),
  *aff'd*, 787 F. App'x 749 (Fed. Cir. 2019) ....................................................................13

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)....................................................................................16

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335, 1346 (Fed. Cir. 2018)..........................................................................15

*Mayo Collaborative Servs. V. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012).....................................................................................................6, 12

*McRO, Inc. v. Bandai Namco Games America Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016)....................................................................................13

*Mgmt. Sci. Assocs., Inc. v. Datavant, Inc.*,
  510 F. Supp. 3d 238 (D. Del. 2020)..............................................................................10

*Missed Call, LLC v. Freshworks, Inc.*,
  1:22-cv-00739-CFC, D.I. 10 (D. Del)..............................................................................1

*Missed Call, LLC v. NEC Corporation of America*,
  3:22-cv-01079, D.I. 22 (N.D. Tex.) ................................................................................1

*NICE Ltd. v. CallMiner, Inc.*, No. 18-CV-2024-RGA,
  2020 WL 1502290 (D. Del. Mar. 30, 2020) .................................................................11

*Parker v. Flook*,
  437 U.S. 584 (1978).........................................................................................................6

*Telinit Techs., LLC v. Alteva, Inc.*, No. 2:14-CV-369,
  2015 WL 5578604 (E.D. Tex. Sept. 21, 2015) ............................................................12

3

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1084 (Fed. Cir. 2019) ........................................................................14

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ..........................................................................5

*Voip-Pal.Com, Inc. v. Apple Inc.*,
    375 F. Supp. 3d 1110 (N.D. Cal. 2019) ..........................................................10

*Voip-Pal.com, Inc. v. Twitter, Inc.*,
    798 F. App'x 644 (Fed. Cir. 2020) ..................................................................10

*West View Research, LLC v. Audi AG*,
    685 F. App'x 923 (Fed. Cir. 2017) ..................................................................10

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) ......................................................................5, 8


**Statutes**

35 U.S.C. § 101 ........................................................................................2, 3, 5, 7


**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................3, 5

4

## I.    INTRODUCTION

The idea of labeling a missed call as either "urgent" (when a standard network signal indicates that the network terminated the call) or "not urgent" (if the network signal indicates the caller hung up on his or her own), and displaying the label to a user, is abstract and not eligible for patent protection. All claims of U.S. Patent No. 9,531,872 ("the '872 patent"), the only patent asserted in this case, are squarely directed to this abstract idea. Plaintiff Missed Call, LLC's Complaint against Twilio Inc. should therefore be dismissed with prejudice.

## II.    NATURE AND STAGE OF THE CASE

Missed Call registered as a Texas company in February of 2022 and in March became the assignee of the '872 patent. On June 6, 2022, Missed Call filed a lawsuit accusing Twilio of infringing the '872 patent in the District of Delaware. *Missed Call, LLC v. Twilio Inc.,* 1:22-cv-00742, D.I. 1 (D. Del.) (the "Delaware case").[1] In view of the facially obvious defects in the '872 patent claims, Twilio filed a motion to dismiss the Delaware action on August 30, 2022. *Id.* at D.I. 10, 11. Rather than respond to Twilio's motion, Missed Call elected to dismiss the case without prejudice. *Id.* at D.I. 14. However, because there were questions about Missed Call's compliance with Judge Connolly's Standing Order requiring the disclosure of financially interested parties, the Delaware case was stayed pending resolution of a similar issue in another case filed by the same Plaintiffs' law firm. *See In re Nimitz Technologies LLC,* Appeal No. 23-103 (Fed. Cir. 2023).[2] *Id.* at D.I. 22. That petition was finally resolved on February 7, 2023. On October 24, 2023, Missed Call filed suit against Twilio in the Western District of Texas alleging infringement of the same

---

[1] Missed Call has filed suit against seven other defendants in the District of Delaware, the Northern and Western Districts of Texas, the District of Colorado, and this District. Several defendants also filed motions to dismiss under 35 U.S.C. § 101. *See e.g., Missed Call, LLC v. NEC Corporation of America,* 3:22-cv-01079, D.I. 22 (N.D. Tex.); *Missed Call, LLC v. Freshworks, Inc.,* 1:22-cv-00739-CFC, D.I. 10 (D. Del); *Missed Call, LLC v. Freshworks, Inc.,* 1-23-cv-02913, D.I. 25 (D. CO). All have been voluntarily dismissed. The *Freshworks* case was voluntarily dismissed after Plaintiff failed to respond to a motion to transfer, even after an extension and five and a half weeks had passed.

[2] Specifically, in the *Nimitz* case Judge Connolly ordered Nimitz to turn over certain documents for the court's inspection relating to the funding of the case. *See In re Nimitz Technologies LLC,* Appeal No. 23-103, Dkt. 44 (Fed. Cir. 2023).

patent that was at issue in the Delaware case. *Missed Call, LLC v. Twilio Inc.*, 1:23-cv-01294, D.I. 1 (W.D. Tex.) (the "Texas case"). On November 17, 2023, Twilio made Judge Connolly aware of the renewed litigation filed in the Western District of Texas. *Missed Call, LLC v. Twilio Inc.*, 1:22-cv-00742, D.I. 27 (D. Del.), and an in-person status conference was set for February 16, 2024 in that case. *Id.* at D.I. 29. That conference was taken off calendar after Missed Call alerted the court to certain scheduling conflicts and the conference has yet to be rescheduled. *Id.* at D.I. 30. On February 1, 2024, the parties filed a stipulated motion to transfer the Texas case to the Northern District of California pursuant to 28 U.S.C § 1406(a).[3] *Missed Call, LLC v. Twilio Inc.*, 1:23-cv-01294, D.I. 12 (W.D. Tex.). Judge Pitman granted the motion to transfer on February 2, 2024. *Id.* at D.I. 14.

## III.    SUMMARY OF ARGUMENT

The '872 patent claims an abstract idea: labeling a missed call as urgent or not based on receipt of standard telephone network signals, and then displaying the "urgent" or "not urgent" label to a user. Assigning an "urgency" label to a missed phone call based solely on the value of a single standard network signal is not a technological improvement and is ineligible for patent protection under 35 U.S.C § 101.

The '872 patent acknowledges that prior art systems assessed missed call urgency based on the number of times the phone rang.[4] '872 patent at 2:8-11. The patent also admits that conventional telecommunications systems determined whether a phone call was terminated by a user or by the network and provided this information via a signal called a "cause value." *Id.* at 3:49-4:22. The only purported advance of the '872 patent is using the already-known "cause value" to label the missed call as "urgent" (if the cause value shows that caller let the phone ring until the

---

[3] Defendant's position is that Delaware is also a proper venue for this case because the Delaware case was the first-filed case and because Twilio is incorporated in Delaware. Notably, Twilio's earlier Motion to Dismiss pursuant to 35 U.S.C § 101 is still pending in the Delaware case, which is currently stayed.

[4] *See also Missed Call, LLC v. Freshworks, Inc.*, 1:22-cv-00739-CFC, D.I. 13 at 12 (D. Del) (admitting the prior art included "detecting ringing of a telephone and [] providing through a visual display a record of the number of times the telephone has been permitted to ring…").

network terminated the call) or "not urgent" (if the cause value shows that the caller hung up on their own) and displaying that label to an end user.

Neither the claims nor the specification of the '872 patent recite any specific hardware or software required to accomplish the claimed idea. Instead, the alleged invention uses off-the-shelf generic components like a conventional mobile or fixed phone, "antenna," and "display" to perform conventional activities like "receiving an incoming call" and "output[ing] to a user" certain information. '872 patent at 3:15-42. Beyond these generic computer components, the claims are directed only to an urgency assessment that can be fully accomplished by the human mind. Any secretary (or really anyone familiar with phone operation) is fully capable of making a guess about whether a phone call is "urgent" or "not urgent" based on whether the phone call rang the usual maximum number of times (versus terminating early), and then communicating that assessment to the intended call recipient.

The '872 patent claims are not directed to a technological solution to a technological problem. Rather, they are directed to using generic hardware to extract pre-existing conventional information about the nature of a missed call and labeling the call in a simple and routine binary fashion ("urgent" if the pre-existing information shows that the call was ended by the network, and "not urgent" if it shows that the call was ended by the caller).

Because this purported inventive concept is nothing more than an abstract label that applies in any technological context, the claims of the '872 patent are invalid under 35 U.S.C. § 101. Twilio therefore asks the Court to dismiss the Complaint with prejudice. Fed. R. Civ. P. 12(b)(6).

## IV.  STATEMENT OF FACTS

Plaintiff's Complaint contains no allegations relevant to the two-step *Alice* inquiry. *See generally* D.I. 1. Plaintiff did not attempt to articulate any inventive concept, nor to provide any similar factual allegations. *Id.*

The '872 patent is titled "Communication Apparatus for Providing Indication About a Missed Call, and Method Thereof." D.I. 1, Exhibit A. The '872 patent purports to improve the indications that a communication apparatus (*e.g.*, a telephone) gives to a user when the user misses

a phone call. '872 patent at Abstract, 1:12-13. According to the patent, past communication devices were deficient because a telephone user with a missed call did not know whether the caller (a) hung up after only a few rings or (b) remained on the line until the call timed-out after reaching the maximum number of rings allowed by the network. *Id.* at 1:36-43, 2:12-18. The patent surmises that if a caller hangs up earlier, after only a few rings, the call is not urgent. *Id.* at 1:44-49. In contrast, if the caller remains on the line until the network times-out, the patent alleges it is "highly probable" that the call is "more important or urgent than a short duration ringing call." *Id.* at 1:44-19; 4:29-35. Therefore, according to the patent, it is advantageous to indicate to a telephone user whether a missed call was terminated by the caller or the network.

The '872 patent purports to solve this problem by providing the user with an "indication" of whether the call was terminated by the network (and thus urgent) or terminated when the caller hung up early. *Id.* at 1:12-3, 4:43-48, 4:11-22, 5:58-6:6. The patent admits that telecommunication networks already had standardized procedures for determining the cause of call termination at the time of the invention. *Id.* at 3:49-4:5. Specifically, the patent explains, the networks already included "a mandatory element called 'cause information element'" that comprised "a 'cause value' apt to categorize the cause of the disconnection." *Id. See also id.* at 4:20-22 (identifying standard options for the mandatory cause value). The mandatory cause element was also already available to the network and the called phone in pre-existing conventional networks. *Id.* at 4:6-9.

The allegedly inventive feature of the '872 patent does nothing but convert the conventional cause value the network was already transmitting into an "urgent/not urgent" label for an end user. *Id.* at 1:44-49; 4:29-52; 6:1-6, Fig. 2 at 180 and 181. The remaining claim elements recite generic components operating in a usual, conventional manner. For example, "communication apparatus" is a "mobile or fixed phone" (3:12-14); the "receiving means" an antenna or the like (3:27-31); and the "output means" a display, loudspeaker, speaker, or "similar means apt to output information to [a] user." *Id.* at 3:32-37. The "control unit" and "processing means" are also described generically as having the functions of "outputting information to a user" and "extracting" specific data from information received from a network. *Id.* at 3:32-37, 3:43-48.

4

Accordingly, the claimed invention uses well-known and conventional components for their usual purposes.

## V.     LEGAL STANDARDS

### A.     Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although well-pled facts are taken as true, the Court should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79.

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v Kappos*, 561 U.S. 593, 602 (2010). Accordingly, a patentability challenge under § 101 may be resolved on the pleadings, before claim construction, if it is apparent from the face of the patent that the asserted claims are directed to ineligible subject matter. *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer J., concurring); *Bancorp Servs. L.L.C. v Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101."). The Federal Circuit has affirmed numerous § 101 dismissals at the pleading stage. *See, e.g, Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021).

### B.     Patent eligibility under 35 U.S.C. § 101

"[L]aws of nature, physical phenomena, and abstract ideas" are not patentable subject matter. *Diamond v Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). "[A]bstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work" and allowing a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12, 653 (internal quotations omitted). The Supreme Court has articulated a two-step framework for determining whether a patent claim is directed to a patent-ineligible abstract

idea. *Alice Corp. Pty. Ltd. V. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). In step one, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Id*. In so doing, the court must determine "whether the claims focus on a specific means or method that improves the relevant technology or are directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Apple, Inc. v. Ameranth, Inc*., 842 F.3d 1229, 1241 (Fed. Cir. 2016) (internal quotations omitted).

In the second step, if the claim is directed to an abstract idea, the court then assesses whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217 (internal quotations and citations omitted). However, "a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

Transformation into a patent-eligible invention "requires more than '[s]imply stating [the] abstract idea while adding the words 'apply it.'" *Id*. at 223 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 566 U.S. 66, 76 (2012). Indeed, if a claim can be performed in the human mind or with pen and paper, it is not patent-eligible. *See CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1372 (Fed. Cir. 2011). A claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a category or field of use, or technological environment. *See Mayo,* 566 U.S. at 79-80; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr,* 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 566 U.S. at 82.

## VI. ARGUMENT

### A. The '872 patent is invalid under 35 U.S.C. § 101.

The claims of the '872 patent fail both prongs of the *Alice* test. First, the claims are directed to the abstract idea of labeling a missed call as "urgent" when the network signals that it terminated

the call or "not urgent" if it didn't. This is nothing more than creating a new label for the already-existing "cause value" utilizing the pre-existing concept that the number of rings can correlate with call importance, and performing the routine task of displaying that new label to the call recipient. '827 patent at 2:8-11. Second, the claims lack an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *See Alice*, 573 U.S. at 218 (emphasis added). The claims recite generic hardware used in a well-known conventional manner, and even the "cause value" that identifies why the call was terminated is not just well-known and conventional, but a standard in telecommunications networks.

### 1. Claim 1 is representative.

Claim 1 is representative because all of the claims in the '872 patent contain the same elements and are directed to the same abstract idea.

The '872 patent contains two independent claims: claims 1 and 10. Claim 1 is an apparatus claim directed to hardware capable of executing the invention (*i.e.* capable of "providing an indication about a missed telephone call") and claim 10 is a corresponding method claim. Both claims recite the same elements: receiving an incoming call, processing the incoming call, extracting a cause value indicating the cause of call termination, and outputting to a user an indication that the missed call was either caused by the caller or caused by the network and urgent. *Compare* '872 patent at 6:32-58 with 7:24-8:20. Both claims are directed to the same abstract idea, and no differences between the claims are material to the §101 analysis.

Claim 1 is representative of the dependent claims too. They further recite conventional features of mobile phones (claims 6-9), conventional features of industry-standard telecommunications messages (3, 4, 11, and 12), and the abstract idea itself, *i.e.* the provision of urgent/not urgent messages (2, 5, 13). As explained below, no additional limitation in a dependent claim alters the § 101 analysis.

## 2. Alice step 1: the claims are directed to an abstract idea.

At step 1, the court asks whether the patent claims are directed to patent-ineligible subject matter, such as an abstract idea. *Alice*, 573 U.S. at 217. The inquiry is directed by "what the patent asserts to be the focus of the claimed advance over the prior art" based on "the language of the [a]sserted [c]laims themselves, considered in light of the specification." *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021), *cert. denied,* 142 S. Ct. 1113 (2022).

The '872 patent's alleged advance over the prior art is captured in the final two "wherein" clauses of claim 1:

> wherein, **when a caller ends the received incoming call**, said cause value indicates that the received incoming call was cleared by the caller, and the communication apparatus outputs to the user via said output means an **indication that the missed received incoming call was caused by the caller**; and
>
> wherein, **when the network automatically ends the received incoming call**, said cause value consequently indicates that the received incoming call was cleared by the network, and the communication apparatus consequently outputs to the user via said output means an **indication that the missed received incoming call was caused by the network and was urgent**.

*Id.* at 6:52-58 (emphasis added). *See also id.* at 1:19-2:18, 2:46-48 (explaining that these concepts are the alleged advance over the prior art). But this alleged advance is nothing more than the abstract idea of taking conventional (indeed, both pre-existing and mandatory) "cause information" and deciding to label one such standard signal "urgent." *Id.* at 3:65-4:35; 5:61-6:6. The idea of labeling conventional and well-known information and displaying that label to a call recipient is entirely abstract and requires no technological element at all. As noted above, any human who has operated a conventional telephone can observe the number of rings compared to the usual maximum number of rings, mentally label the call as "urgent" or "not urgent," and share that label with the call recipient.

The claim elements preceding these wherein clauses also all comprise well-known, conventional, and generic components used in an ordinary manner:

| Claim Language | Conventional components |
|---|---|
| A **communication apparatus** for providing an indication about a missed telephone call, said apparatus comprising: | "communication apparatus" is a mobile or fixed phone. '872 patent at 3:12-14. |
| **receiving means** for receiving an incoming call; | "receiving means" is an antenna, or the like. *Id.* at 3:27-31. |
| **control unit** configured to process said received incoming call that is received by the communication apparatus | "control unit" is described generically; no structure identified. *Id.* at 3:32-37. |
| **output means** for outputting information to a user of the communication apparatus; and | "output means" is a display, loudspeaker, speaker, or "similar means apt to output information to [a] user." *Id.* at 3:32-37. |
| **processing means** for extracting a **cause value** contained in a cause information element sent from a network to said communication apparatus, and for outputting to the user, via the output means, an indication related to a missed received incoming call that is received by the communication apparatus but is not answered by the user of the communication apparatus | "processing means" is described generically; no structure identified. *Id.* at 3:43-48. a "cause value" is part of a "mandatory element called 'cause information element'" in standard telecommunications networks. *Id.* at 3:65-4:5. |

Thus, the character of the claims in their entirety is directed to a patent-ineligible concept.

Analogous claims are regularly found patent ineligible. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (To determine whether claims are directed to an abstract idea courts generally "compare claims at issue to those claims already found to be directed to an

9

abstract idea in previous cases."). It is well-understood that receiving, processing, and outputting information to a user is an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) (listing cases holding that collecting and analyzing information, then presenting results is abstract). *See also West View Research, LLC v. Audi AG*, 685 F. App'x 923, 926 (Fed. Cir. 2017) (invalidating claims directed to the abstract idea of collecting and analyzing information and generating a response); *In-Depth Test, LLC v. Maxim Integrated, Prod., Inc.*, No. CV 14-887-CFC, 2018 WL 6617142, at *4 (D. Del. Dec. 18, 2018), *aff'd*, 787 F. App'x 749 (Fed. Cir. 2019) (claims directed to the abstract ideas of generating, receiving, analyzing by means of statistics, and reporting data found not directed to patentable subject matter).

This Court held claims directed to the abstract idea of routing a call based on characteristics of the caller and callee were abstract in *Voip-Pal.Com, Inc. v. Apple Inc.*, 375 F. Supp. 3d 1110, 1134 (N.D. Cal. 2019), *aff'd sub nom. Voip-Pal.com, Inc. v. Twitter, Inc.*, 798 F. App'x 644 (Fed. Cir. 2020). The claims in that case recited, in relevant part, classifying calls as "public" or "private" based on classification criteria and sending a message based on the classification. *Id.* at 1120. Here, the '872 claims recite classifying calls as either "urgent" or "not urgent" based on termination information and sending a message based on the classification. *See e.g.,* '872 patent at 6:46-58. In *Voip-Pal*, like here, the specification confirmed that the other recited limitations were nothing more than generic components and data fields commonly used in telecommunications networks. *Voip-Pal.Com, Inc.*, 375 F. Supp. 3d at 1130-31. For example, the claims recited standard data fields like a "caller identifier field," just like the '872 claims recite a "cause value." *Compare id.* at 1136 with '872 patent at 3:43-4:22.

Courts regularly find claims abstract where "besides labeling… the patent merely describes routine data collection and manipulation." *Mgmt. Sci. Assocs., Inc. v. Datavant, Inc.*, 510 F. Supp. 3d 238, 248 (D. Del. 2020). In *Datavant,* the claims recited use of a "client tag" to label a specific individual, but otherwise "merely describe[d] routine data collection and manipulation." *Id.* Likewise here, other than the "urgency" label, the claims admit they rely on routine (and in fact, mandatory) data transferred in conventional telecommunications networks. Many other cases

similarly find that merely labeling information is an abstract idea not eligible for patent protection. *See e.g., Dropbox, Inc. v. Synchronoss Techs., Inc*., 371 F. Supp. 3d 668, 688 (N.D. Cal. 2019), *aff'd*, 815 F. App'x 529 (Fed. Cir. 2020) (labeling a data connection did not save claims directed to otherwise conventional computer functionality from abstractness); *eDekka LLC v. 3Balls.com, Inc*., No. 2:15-CV-541 JRG, 2015 WL 5579840, at *3 (E.D. Tex. Sept. 21, 2015) (claims directed to storing and labeling information and further to conveying the labeled information to a user held abstract); *Gonzalez v. Infostream Grp., Inc*., No. 2:14-CV-906-JRG, 2016 WL 1643313, at *4 (E.D. Tex. Apr. 26, 2016), *aff'd sub nom. Gonzalez v. New Life Ventures, Inc.*, 696 F. App'x 511 (Fed. Cir. 2017) ("gathering and labeling information to facilitate efficient retrieval" is abstract).

Further, it does not matter that the information used to draw the urgency inference is specific to telecommunications. The "realm of abstract ideas" includes "collecting information, including when limited to particular content." *Elec. Power Grp.*, 830 F.3d at 1353 (collecting cases). The '872 claims are indistinguishable from the many cases finding claims directed to receiving, processing, and outputting information in the telecommunications space patent ineligible abstract ideas.

*Reese v. Sprint Nextel Corp.*, 774 F. App'x 656, 660 (Fed. Cir. 2019) provides an additional instructive example. There, the claims were ineligible as directed to the abstract idea "of receiving information (a calling phone number flagged as private) and sending an indication (an audible tone) to a party already engaged in a call" when a private number was identified. *Id.* There was nothing inventive about how the information was received or how the indicating tone was sent in response. *Id.* Here too there is nothing inventive about how the "cause value" is identified and extracted nor how the "urgent" status is inferred and sent to the call recipient. '872 patent at 3:43-4:22 (identifying standard cause values as pre-existing); 3:34-37 (output by display, loudspeaker, etc). As in *Reese*, claims directed to obtaining and analyzing known information and providing it to a user are not patent eligible.

Many other cases have likewise held patent claims directed to processing and outputting data about telephone communications are directed to abstract ideas. *See e.g., NICE Ltd. v. CallMiner, Inc.*, No. 18-CV-2024-RGA, 2020 WL 1502290, at *5 (D. Del. Mar. 30, 2020) (claims directed to classifying telephonic communications as different types are abstract); *Telinit Techs., LLC v. Alteva, Inc.*, No. 2:14-CV-369, 2015 WL 5578604, at *16 (E.D. Tex. Sept. 21, 2015) (claims that required, in relevant part, "monitoring" a call and "providing a user with notifications" regarding the status of the call held abstract).

The '872 patent's labeling of calls as "urgent" or "not urgent" also falls within the line of cases finding that applying a predetermined rule to collected data is an abstract idea. *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (Claims reciting the application of certain rules to collected data not eligible under § 101). This is particularly true where, as here, the rules comprise "the same questions (though perhaps phrased with different words) that humans in analogous situations…have asked for decades." *Id.*

What the '872 patent provides is no different from a secretary recognizing the maximum number of times the office phone usually rings and judging whether the caller hung up before then. The secretary can—wholly in his or her mind—determine how long the caller stayed on the line, and whether to label the call as "urgent." Therefore, "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper." *Intellectual Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307, 1318 (Fed. Cir. 2016). For all these reasons, the '872 patent claims fail step 1 of the *Alice* test.

### 3. Alice step 2: the claims contain no inventive concept sufficient to confer patent eligibility.

Step 2 considers whether claims contain "an inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice,* U.S. at 221-22 (internal quotations omitted). "[T]o transform an unpatentable law of nature [or abstract idea] into a patent-eligible application of such law [or abstract idea], one must do more than simply state the law of nature [or

abstract idea] while adding the words 'apply it.'" *Mayo Collaborative Servs. V. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) (emphasis omitted). Here, the claims merely recite applying the abstract idea using generic hardware components according to their conventional purposes to extract and label already-existing information, and the specification further admits there is nothing inventive about the order of the claim limitations. Thus, step 2 does not save these patent ineligible claims.

### a) The individual claim elements are generic and provide no inventive concept.

"Reciting an abstract idea and applying it on telephone network equipment is not enough for patent eligibility." *Reese,* 774 F. App'x at 661. Here, as in *Reese,* "[n]othing in the claims requires anything other than conventional telephone network equipment to perform the generic functions of receiving and sending information." *Id.* The '872 patent does not claim any unique method of generating information about the cause of a missed call. To the contrary, the patent admits that conventional "cause values" are used, and that these are "a mandatory element" in pre-existing telecommunications systems. *Id.* at 3:65-4:5. *Elec. Power Grp.*, 830 F.3d at 1355 (finding abstract claims that "do not even require a new source or type of information, or new techniques for analyzing it.").

The '872 patent does not claim any unique method for receiving or outputting information either, instead pointing to conventional "receiving means" such as an "antenna" and conventional "output means" such as a display, loudspeaker, speaker, or "similar means apt to output information to [a] user." *Id.* at 3:27-37. *See also buySAFE, Inc. v. Google, Inc.,*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("receiv[ing] and send[ing] information over a network ... is not even arguably inventive.").

Finally, the '872 patent does not claim any unique method of processing call information, reciting only the results-oriented wherein clauses that require an "urgent" indication to be output when the "cause value" indicates that a call was terminated by the network. Therefore, the claims are not "focus[ed] on a specific means or method that improves the relevant technology [but] are

instead directed to a result or effect that itself is the abstract idea and merely invoke[s] generic processes and machinery." *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (citing *Enfish*, 822 F.3d at 1336).

The idea of using how long a caller stayed on the line to assess urgency does not provide an inventive concept either. First, this is the abstract idea itself, which cannot itself provide the inventive concept. *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019). But in any event, the patent admits that prior art systems already would "count the number of rings of a missed call, in particular ***for detecting the importance of said missed call***." '872 patent at 2:8-11 (emphasis added).

The use of generic computer elements does not transform an otherwise abstract idea into patent-eligible subject matter. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014). Therefore, the '872 patent's claims fail to articulate anything to transform the core abstract idea in a patent-eligible application.

### b) The dependent claims provide no inventive concept.

No inventive concept can be found in the dependent claims either. Claims 6-9 recite only conventional features of a communication apparatus, *i.e.* it is a mobile phone (claim 6), has means to transmit an outgoing call (claim 7), has means to allow a user to input information (claim 8), and can store a telephone number (claim 9). Claims 3, 4, 11, and 12 recite specific cause values from industry-standard telecommunications messages. *See* '872 patent at 3:49-4:22, 4:36-53. The remaining three dependent claims recite the abstract idea itself, *i.e.* the labeling of a missed call as urgent/not urgent, and "[t]he abstract idea itself cannot supply the inventive concept." *Trading Techs. Int'l, Inc.*, 921 F.3d at 1093. Therefore, the additional limitations provided in the dependent claims do not transform the claims into a patent-eligible application of the abstract idea.

### c) The order of claim steps in the method claims does not provide an inventive concept.

Finally, the elements of the claim must also be considered as an ordered combination. *Alice,* U.S. at 217-18. But here, the '872 patent admits that the order of the claim limitations is not critical

to the invention. While claim 10 recites a "method for providing an indication about a missed call" comprising various "receiving," "processing," "outputting," "verifying,' and "extracting" steps, the '872 patent states that the steps "may be performed in a different order than in the one described" and further that "[t]he apparatus and method described…may be subject to many possible variations without departing from the novelty spirit of the inventive idea" such as using "different sequences of steps." '872 patent at 5:10-12, 6:10-16. Even if the order of claim steps were important, there is nothing inventive about receiving, then processing, then outputting pre-existing information. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1346 (Fed. Cir. 2018) (accessing then processing, then displaying data not inventive). Therefore, the order of the claim limitations likewise provides no inventive concept.

## VII.    CONCLUSION

For the foregoing reasons, the '872 patent is invalid under 35 U.S.C. § 101 and *Alice*. 573 U.S. at 217. Defendant respectfully requests the Complaint be dismissed with prejudice.


March 25, 2024                                   Respectfully Submitted,

                                                 By: */s/ Chris R. Schmidt*

                                                 **ERISE IP, P.A.**
                                                 Eric A. Buresh (*pro hac vice*)
                                                 Lydia C. Raw (*pro hac vice*)
                                                 Chris R. Schmidt (CA Bar No. 298761)

                                                 ***Attorneys for Defendant Twilio Inc.***

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on March 25, 2024, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

/s/ Chris R. Schmidt
Chris R. Schmidt